UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


| DELORES CHATELAIN | CIVIL ACTION |
|---|---|
| VERSUS | NO: 09-4453-LMA-SS |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION | |

### REPORT AND RECOMMENDATION

The plaintiff, Delores Chatelain ("Chatelain"), seeks judicial review, pursuant to Section 405(g) of the Social Security Act (the "Act"), of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. § 423. Rec. doc. 1.

### PROCEDURAL HISTORY

On August 20, 2007, Chatelain submitted an application for benefits, r. 94-101, contending that she became unable to work on August 24, 2005. R. 94. She reported that she could not work because of several conditions, including major depression. R. 109. On September 21, 2007, her application was denied. R. 51-54. On January 13, 2009, there was a hearing before an Administrative Law Judge ("ALJ"). Rec. doc. 20-47. On January 29, 2009, the ALJ issued an unfavorable decision. R. 12-19. On May 27, 2009, the Appeals Council denied her request for review. R. 1-4. On July 21, 2009, Chatelain filed a complaint for judicial review of the final decision denying her claim for disability insurance benefits. Rec. doc. 1.

On November 30, 2009, Chatelain filed a motion to remand for consideration of additional evidence. Rec. doc. 11. It was recommended that the motion be denied. Rec. doc. 17. The recommendation was adopted. Rec. doc. 19. On June 30, 2010, Chatelain filed her motion for summary judgment. Rec. doc. 21. The Commissioner filed a cross-motion for summary judgment. Rec. doc. 22. Chatelain is represented by counsel.

## **STATEMENT OF ISSUES ON APPEAL**

Chatelain's request for judicial review raises the following issues:

Did the ALJ fail to apply the correct legal standard to determine an onset date?

## **THE ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL**

The ALJ made the following findings relevant to the issues on appeal:

1. Chatelain last met the insured status requirements of the Social Security Act on June 30, 2006.

2. Chatelain did not engage in substantial gainful activity during the period from her alleged onset date of August 24, 2005 through her date last insured of June 30, 2006 (20 CFR 404.1571 et seq.).

3. Through the date last insured, June 30, 2006, there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment (20 CFR 404.1520(c)).

4. Chatelain was not under a disability, as defined in the Social Security Act, at any time from the alleged onset date through the date last insured (20 CFR 404.1520(c)).

R. 17-18.

## **ANALYSIS**

a. <u>Standard of Review</u>.

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact

and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000); Spellman v. Shalala, 1 F.3d 357, 360 (5th Cir. 1993). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971); Newton, 209 F.3d at 452. Alternatively, substantial evidence may be described as that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000). This court may not re-weigh the evidence, try the issues *de novo* or substitute its judgment for the Commissioner's. Id.; Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990).

The administrative law judge is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. See Arkansas v. Oklahoma, 503 U.S. 91, 113, 112 S.Ct. 1046, 1060 (1992). Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. Villa, 895 F.2d at 1022; Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995).

To be considered disabled and eligible for disability insurance benefits, plaintiff must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599

& appendices, §§ 416.901 to 416.998 (1997). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. Id. §§ 404.1520, 416.920; Newton v. Apfel, 209 F.3d at 453; Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 514 U.S. 1120, 115 S. Ct. 1984 (1995).[1] The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled. Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995).

The claimant has the burden of proof under the first four parts of the inquiry. Id. If she successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy, which the claimant is capable of performing. Greenspan, 38 F.3d at 236; Kraemer v. Sullivan, 885 F.2d 206, 208 (5th Cir. 1989). When the Commissioner shows that the claimant is capable of engaging in alternative employment, "the ultimate burden of persuasion shifts back to the claimant." Id.; accord Selders, 914 F.2d at 618.

The Court "weigh[s] four elements of proof when determining whether there is substantial

---

[1] The five-step analysis requires consideration of the following:
First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).
Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. Id. §§ 404.1520(c), 416.920(c).
Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. Id. §§ 404.1520(d), 416.920(d).
Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. Id. §§ 404.1520(e), 416.920(e).
Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy. If the claimant cannot meet the demands, he or she will be found disabled. Id. §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 (1994) ("Medical-Vocational Guidelines").

evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) [her] age, education, and work history." Martinez v. Chater, 64 F.3d 172, 174 (5th Cir. 1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." Id.

b.  Testimony at Hearing.

Chatelain spent most of her life in St. Bernard Parish. R. 32. At the time of the hearing she lived in Ponchatula. R. 31. Her last day of work was August 24, 2005. R. 33. She and her husband evacuated to Jonesville, Louisiana. R. 35. Three weeks after Hurricane Katrina, she moved in with her daughter and son-in-law in Hammond. R. 36.

Chatelain believed that she began seeing Dr. Seligson-Dowie at Ochsner in the fall of 2005.[2] R. 36-37. She saw Dr. Seligson-Dowie about once a month for about a year. R. 37. Dr. Seligson-Dowie moved across the Mississippi River, so Chatelain stopped seeing her. R. 37. It was possible that she did not begin seeing Dr. Seligson-Dowie until the fall of 2006 as 2005 was very blurry to her. R. 37. If the Ochsner records indicated that she saw Dr. Seligson-Dowie from November 2006 through October 2007, she believed that was probably correct. R. 38.

Dr. Seligson-Dowie completed a form questionnaire on which she indicated that she first saw Chatelain on June 13, 2006. R. 38. Chatelain believed this was for a consultation, and she began going to Dr. Seligson-Dowie regularly a couple of months later. R. 39. The June 13, 2006 visit was a kind of interview. R. 39. Dr. Dowie did not give Chatelain any medication on the June 13, 2006 visit. R. 39. Ochsner, however, reported that it had no record of treatment for Chatelain through June 30, 2006. R. 44. Chatelain could not remember when she first saw Dr. Seligson-Dowie. R.

---

[2] Dr. Seligson-Dowie was in the department of psychiatry at Ochsner Clinic Foundation. R. 155.

42. At the end of 2006 she started taking medication prescribed by Dr. Seligson-Dowie. R. 40. She obtained her medication from Wal-Mart in Hammond. R. 40.

Chatelain said she suffered from atrial fibrillation, high blood pressure, diabetes, high cholesterol, panic attacks, anxiety, crying, panic attacks, diabetic neuropathy, a pinched nerve in her neck, and numbness in her right side. R. 42-43. Her depression, anxiety, panic attacks, and crying began after Hurricane Katrina when she lost everything. R. 42. She had panic attacks about three to four times a week which lasted about one to two hours. R. 43. She scratched her skin so much that it bled. R. 43. Chatelain spent most of the day in her nightgown. R. 45. She did not like to go out. R. 45. When she did go out, she found that her heart raced and she was nervous. R. 46. Her hands shook so much that her husband had to do the cooking and shopping. R. 46. She had difficulty sleeping. R. 46. She had terrible nightmares. R. 46. Chatelain's representative urged that the problems began after Katrina. Before Katrina she was able to cope. R. 45.

c.  Medical Evidence.

On September 21, 2006, Chatelain was seen by Dr. Sandra Nieto[3] at Ochsner's northshore medical center. The note states that, "[t]he patient is here to get established." R. 205. The physical examine found her alert, oriented, and in no acute distress. The diagnoses were type 2 diabetes, hyperlipidemia and depression. She was to return in three months. She was referred to Dr. Janet Seligson-Dowie for her depression. R. 205.

On November 7, 2006, Chatelain was seen by Dr. Seligson-Dowie at Ochsner in Covington. The note states that, "[t]he patient presents for followup of anxiety and depression." R. 155. She reported increased irritability, anxiety, decreased energy, and decreased sleep for three weeks. She

---

[3] Dr. Nieto's speciality does not appear on the records.

related that she was unable to turn off her worries at bedtime. She did not report panic attacks. She reported increased skin picking on forearms and abdomen. She was diagnosed with dysthmic disorder, recurrent major depressive disorder, general anxiety disorder, and panic disorder without agoraphobia (fear and avoidance of public places). Medication was prescribed. She was to return in one month. R. 155-56.

Chatelain returned to Dr. Seligson-Dowie on January 16, 2007. It was recommended that psychotherapy begin at the next appointment. She was to return in one to two weeks. R. 153-54. On February 13, 2007, she returned and reported significant improvement in anxiety. Psychotherapy was recommended. She was to return in one month. R 151-52. On April 3, 2007, she returned. Her mood had improved and her anxiety was slightly reduced. She was to return in two months. R. 149-50. On August 23, 2007, she returned and reported that her stepson and grandfather-in-law both died several weeks before. She reported exacerbation of her depressed mood and panic attacks. She was to return in one month. R. 147-48. On September 27, 2007, she returned and reported depressed mood and increased anxiety. She was to return in one month. R. 193-94. On November 1, 2007, she returned and reported increased anxiety, depressed mood and panic attacks. She was to return in two months. R. 191-92. There are no records of further visits to Dr. Seligson-Dowie.

On September 5, 2007, Dr. Seligson-Dowie completed a psychiatric and psychological questionnaire. R. 157-64. Chatelain's prognosis was good with consistent psychotherapy and psycho-pharmacological management. R. 157. She reported that the date of first treatment was June 13, 2006, but there is no evidence that Chatelain was seen by Dr. Seligson-Dowie prior to November 7, 2006.

Chatelain returned to Dr. Nieto on December 6, 2006. She was diagnosed with migraine headaches and medication was prescribed. Her hypertension was described as over-controlled. The diabetes was under poor control. The hyperlipidemia was under control. Dr. Nieto recommended that Chatelain increase her exercise. R. 202-03. A mammogram was negative. R. 204. On March 2, 2007, she returned to Dr. Nieto with complaints of migraine headaches which were described as uncontrolled. Medication was prescribed. She was referred to neurology. R. 201. On May 1, 2007, she was seen by Dr. Nieto. The diagnosis was low vitamin B-12. R. 200. On June 12, 2007, she returned to Dr. Nieto with complaints of left leg pain. Dr. Nieto recommended that she see an orthopedist. R. 199. On September 5, 2007, she returned to Dr. Nieto for a follow-up on her diabetes. R. 198. On February 8, 2008, she returned to Dr. Nieto for a follow-up on diabetes, depression, hyperlipidemia and high blood pressure. R. 196-97.

On March 15, 2007, Chatelain was seen by Dr. Michael Fisher at St. Tammany Parish Hospital for headaches. R. 188-89. A CT angiogram of the brain was normal. R. 177. An MRI did not reveal any acute abnormality on the brain. R. 175. Less than forty percent bilateral internal carotid artery stenosis was found, and the ratios were normal bilaterally. R. 176. On April 10, 2007, she returned to Dr. Fisher. R. 187. On July 11, 2007, she returned to Dr. Fisher. R. 186. An MRI of the cervical spine indicated cervical spondylosis with a bulge behind C6 at the C5-6 level which caused mild to moderate right foraminal stenosis. R. 173. On July 24, 2007, Dr. Fisher found sensory motor polyneuropathy in the right leg consistent with diabetes. R. 185 and 169-72. On October 26, 2007, there was a bilateral carotid ultra sound which did not reveal hemodynamically significant stenosis. R. 168. On October 31, 2007, she returned to Dr. Fisher. R. 184. On February

19, 2008, she returned to Dr. Fisher with complaints of daily headaches. R. 183. On March 19, 2008, she returned to Dr. Fisher. R. 182.

On April 3, 2007, Chatelain was seen by Dr. Douglas Mendoza.[4] No abnormalities were found with the heart. R. 145-46. An EKG was negative. R. 143-44. On May 8, 2007, Dr. Mendoza found test results which correlated with atrial fibrillation. R. 142. On July 30, 2007, she returned to Dr. Mendoza with reports of chest pain. Medication was prescribed. R. 139-41. On September 7, 2007, she returned to Dr. Mendoza. Medication was prescribed. R. 227-30. On November 28, 2007, Chatelain reported chest pains to Dr. Mendoza. Her medications were changed. R. 223-26. On March 5, 2008, she returned to Dr. Mendoza for a follow-up. Her medication and diet were changed. R. 212-15. On April 29, 2008, she returned to Dr. Mendoza. She was told to return in six months. R. 207-09.

On November 19, 2008, Chatelain was seen by Stacy Boudoin, a nurse practitioner. R. 244. On December 16, 2008, Nurse Boudoin completed a questionnaire. She diagnosed Chatelain with major depression (moderate to severe) and agoraphobia with panic attacks. She described Chatelain as severely impaired. The prognosis was guarded. R. 246-53. On December 17, 2008, she returned to Nurse Boudoin. R. 243. On February 16, 2009, she was seen by Nurse Boudoin. Chatelain reported that she cried every day, she was frustrated, and she was unable to sleep. She was diagnosed with major depression, panic attacks, and post-traumatic stress disorder. She also reported headaches, nausea, and pain in the abdomen and neck. R. 255.

d.  <u>Plaintiff's Appeal</u>.

<u>Issue</u>.  Did the ALJ fail to apply the correct legal standard to determine an onset date?

---

[4] Dr. Mendoza's speciality is not identified. The report is described as cardiovascular results. R. 145.

The ALJ found that there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment through the date last insured. R. 18. Chatelain contends that she was denied benefits because there was no record of a medical examination before the date last insured. Rec. doc. 21. She argues that, pursuant to Social Security Ruling 83-20 and Ivy v. Sullivan, 898 F.2d 1045(5th Cir. 1990), the onset date for disability should be inferred as earlier than her date last insured.[5]

A timeline of the pertinent dates is useful.

| | |
|---|---|
| August 24, 2005 | Date last worked and alleged onset of disability |
| August 29, 2005 | Hurricane Katrina |
| June 30, 2006 | Date last insured |
| September 21, 2006 | First note of visit to Dr. Sandra Nieto. R. 205. |
| November 7, 2006 | First note of visit to Dr. Seligson-Dowie. R. 155. |
| On or about August 1, 2007 | Two members of Chatelain's family die. R. 147. |
| August 20, 2007 | Chatelain submits application for benefits. R. 94-101. |
| August 23, 2007 | Chatelain reports exacerbation of depressed mood. R. 147. |

The ALJ found that: (1) Chatelain "credibly testified that she did not see Dr. Dowie until after June 2006. . . .;" (2) Ochsner reported that there was no record of Chatelain's treatment for February 1, 2005 through June 30, 2006; (3) the only treatment records submitted from Ochsner were from November 2006 onward; and (4) the claimant did not begin treatment with Dr. Dowie until sometime after June 30, 2006, the date last insured. R. 18. The ALJ stated:

---

[5] Social Security Ruling 83-20: Titles II and XVI: Onset fo Disability (Effective October 1, 1982)("SSR83-20")

> Dr. Dowie completed a form in which she specified that she first saw the claimant on June 13, 2006. There were no treatment records attached to the form and no explanation of the evidence relied on in forming that opinion. Based on the claimant's clear testimony, the absence of medical records and the fact that Ochsner affirmatively stated there are no records, the undersigned finds that the doctor's opinion is without substantial support from the other evidence of record, which renders it less persuasive.

R. 18.

The purpose of SSR 83-20 is to state the policy and describe the relevant evidence to be considered when establishing the onset date of disability. "Factors relevant to the determination of disability onset include the individual's allegation, the work history, and the medical evidence." Id.

> In disabilities of nontraumatic origin, the determination of onset involves consideration of the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity. The weight to be given any of the relevant evidence depends on the individual case.

Id.

Chatelain alleges that she became unable to work because of her illness on August 24, 2005. R. 94. In her disability report, she acknowledged that she "stopped working because of Katrina, however due to my medical conditions I am unable to seek new employment." R. 110. Chatelain's testimony at the hearing was conflicting. At first she said she began seeing Dr. Seligson-Dowie in the fall of 2005 and she saw her once a month for about a year. R. 36-37. She acknowledged that it was possible she did not see her until fall of 2006 as 2005 was very blurry. R. 37. If the Ochsner records indicated that she saw Dr. Seligson-Dowie from November 2006 through October 2007, she believed that was probably correct. R. 38. Chatelain's work history and her allegations do not support a finding that she was disabled before June 30, 2006.

SSR 83-20 recognizes that the onset date may be determined from a reasonable inference from the medical evidence. Chatelain cites Ivy v. Sullivan as an example. In Ivy, the last date

11

insured for the claimant was September 30, 1977. She alleged that her condition deteriorated to a disabling state by June 15, 1977. There were medical records demonstrating that she had high blood pressure in 1968, 1972 and 1974, 1979 and 1980. There were no medical records from her treating physician for 1973 through 1978. He testified that his records were destroyed in various burglaries. While he could not recall precise blood pressure readings for this period, he reported that the claimant was five feet and one inch tall, her weight remained at about 267 pounds, and her blood pressure readings were always outside desirable readings. 898 F.2d at 1047. Unlike Chatelain, the work history for the claimant in Ivy corroborated her alleged onset date. Id. at 1048. The Fifth Circuit referred to SSR 83-20 and found that the claimant's medical condition reached a disabled status in June 1977, prior to the date last insured. Id. at 1049.

There are no notes of visits to Dr. Nieto or Dr. Seligson-Dowie prior to the date last insured. The questionnaire completed on September 5, 2007 refers to a June 13, 2006 visit, but it is not a contemporaneous record. R. 157-64.

SSR 83-20 permits a reasonable inference from the medical evidence. The notes from Dr. Seligson-Dowie for the four visits from November 7, 2006 through April 3, 2007 demonstrate improvement in Chatelain's condition. The note for April 3, 2007 states, in part:

> General Impression: Pt reports her mood has improved and anxiety is slightly reduced. No problem sleeping with Vistaril, awaken feeling energetic, yet after taking her various medications . . . feels fatigued. Last panic attack was yesterday afternoon, resolved with alprazolam.

R. 149. On or about August 1, 2007, her stepson and grandfather-in-law both died. R. 147. Chatelain filed her application for benefits on August 20, 2007. R. 94-101. On August 23, 2007, she reported "exacerbation of depressed mood, tearfulness daily, self isolative behavior, decreased motivation, difficulty concentrating, increased anxiety, feelings of panic when surrounded by more

than a few people." R. 147. It is reasonable to infer from the medical evidence and other information that in August 2007 there was a significant decline in her mental condition following the deaths of two family members.

The ALJ applied the correct legal standards to determine that Chatelain was not under a disability as of June 30, 2006, the date last insured, and there is substantial evidence to support this finding.

## RECOMMENDATION

Accordingly, IT IS RECOMMENDED that Commissioner's cross-motion for summary judgment (Rec. doc. 22) be GRANTED, and Chatelain's motion for summary judgment (Rec. doc. 21) be DENIED

## OBJECTIONS

A party's failure to file written objections to the proposed findings, conclusions and recommendations in a magistrate judge's report and recommendation within fourteen (14) days[6] after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 27th day of July, 2010.

                                                **SALLY SHUSHAN**
                                                **United States Magistrate Judge**

---

[6] See 28 U.S.C. § 636(b)(a).